UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

Case No: 8:19-cv-3048-T-02CPT

FREDD ATKINS, MICHAEL WHITE and      CLASS ACTION
MARY MACK, individually and on behalf of all
others similarly situated,

         Plaintiffs,

v.

SARASOTA COUNTY, FLORIDA, COMMISSIONER
NANCY C. DETERT, COMMISSIONER MICHAEL A.
MORAN and COMMISSIONER ALAN MAIO,

         Defendants.
_____/

## AMENDED CLASS ACTION COMPLAINT

Plaintiffs, FREDD ATKINS, MICHAEL WHITE and MARY MACK, individually and on behalf of a class of all others similarly situated, sue Defendants, SARASOTA COUNTY, FLORIDA, NANCY C. DETERT, in her capacity as a member of the Sarasota County Board of County Commissioners, MICHAEL A. MORAN, in his capacity as a member of the Sarasota County Board of County Commissioners, and ALAN MAIO, in his capacity as a member of the Sarasota County Board of County Commissioners, and allege as follows:

## NATURE OF THE ACTION

1. Sarasota County and its Board of County Commissioners (collectively, the "County Commissioners") have recently approved, by a 3 – 2 vote, a resolution defining new boundaries for the five County Commission districts (the "Resolution"). The Resolution was designed to deprive, and has deprived, thousands of African-American voters living in the Newtown community of the right to vote in the 2020 election for members of the Board of

County Commissioners. It also was designed to deprive, and has deprived, Plaintiff Fredd Atkins, an African-American candidate for the Board from District 1, of the right to run for election as District 1 Commissioner in the 2020 election. Additionally, the Resolution was intended to create legislative districts that will favor or disfavor a political party or an incumbent commissioner.

2.  The Resolution violates the United States Constitution and the Federal Voting Rights Act. The Resolution also violates Article III § 21 of the Florida Constitution. This Action seeks to rectify the County Commissioners' unconstitutional and illegal race-based redistricting and its political gerrymandering, and to restore Plaintiffs', and similarly situated Newtown residents', right to vote in the 2020 Sarasota County election.

## JURISDICTION AND VENUE

3.  This Action arises under the Fourteenth Amendment to the United States Constitution and the Voting Rights Act, 52 U.S.C. § 10301 *et seq*. Therefore this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the state law claim alleged in Count III herein pursuant to 28 U.S.C. §1367 because the claim is so related to the Federal Claims asserted herein that they form part of the same case or controversy under Article III of the United States Constitution.

4.  This Court has personal jurisdiction over Defendants because they are residents of this District.

5.  Venue exists in this District pursuant to 28 U.S.C. § 1391 because the Defendants reside in this District and the events giving rise to the claims asserted herein occurred in this District.

## PARTIES

6. Plaintiff FREDD ATKINS is a resident of Sarasota County, Florida whose right to vote in the 2020 election of the Sarasota County Board of Commissioners has been denied or abridged on account of race or color. Mr. Atkins is the first elected African-American citizen to serve on the City of Sarasota Board of Commissioners and also served three terms as Mayor of Sarasota. Mr. Atkins is presently a candidate for Sarasota County Board of Commissioners from District 1.

7. Plaintiff MICHAEL WHITE is a resident of Sarasota County, Florida whose right to vote in the 2020 election of the Sarasota County Board of Commissioners has been denied or abridged on account of race or color.

8. Plaintiff MARY MACK is a resident of Sarasota County, Florida whose right to vote in the 2020 election of the Sarasota County Board of Commissioners has been denied or abridged on account of race or color.

9. Defendant SARASOTA COUNTY, FLORIDA is a local governmental entity created pursuant to a Home Rule Charter in accordance with the Constitution and general laws of the State of Florida.

10. Defendant NANCY C. DETERT is a resident of Sarasota County, Florida and is a member of the Board of County Commissioners as a representative of District 3.

11. Defendant MICHAEL A. MORAN is a resident of Sarasota County, Florida and is a member of the Board of County Commissioners as a representative of District 1.

12. Defendant ALAN MAIO is a resident of Sarasota County, Florida and is a member of the Board of County Commissioners as a representative of District 4.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

13. Plaintiffs are registered voters who reside in the Newtown area of Sarasota County. Until the County Commissioners voted 3 – 2 to move residents of Newtown from Commission District 1 to District 2, they were eligible to vote in the 2020 election of the Sarasota County Board of County Commissioners. The actions of the County Commissioners alleged herein have deprived Plaintiffs and other members of the Class of their right to vote in that election.

14. Additionally, Plaintiff Atkins is a declared candidate for the District 1 Board of County Commissioners' seat in the 2020 election. The County Commissioners' action in moving Newtown residents out of District 1, including Mr. Atkins, has deprived him of his right to run for that seat in 2020 election.

## NEWTOWN

15. Newtown is a special African-American community that came into being in 1914. It has developed into the vibrant heart of Sarasota's African-American community over the past 105 years, through its residents, churches, schools, gardens and cultural arts. Newtown is geographically bordered by Hwy. 301 to the east, Bradenton Road to the west, Myrtle Street to the north and 17th Street to the south, with Dr. Martin Luther King, Jr. Boulevard to the center.

16. Over the years, residents of Newtown have had to fight not only for the right to vote, but also for their votes to be meaningful. Historically, voting rights in Newtown were limited by a discriminatory structure of the local electoral system, which prevented any African-American from serving as a representative for Newtown in Sarasota city or county government. For example, as of 1979, five African-Americans had run for the Sarasota City Commission but were not elected because residents would vote along racial lines, and African-Americans were in the minority. There were no single-member districts, and voting was on a citywide basis,

meaning that as a practical matter Newtown had no real or effective way to elect local representatives to Sarasota city or county governments.

17. In 1979, through the local chapter of the NAACP, Newtown citizens filed a lawsuit under the Federal Voting Rights Act of 1965 to legally challenge the system of representation that had historically prevented the election of African-Americans to City of Sarasota government.

18. The lawsuit was successful. As a result, three single-member city commission districts were created, with one a majority-minority district that included Newtown. Given the opportunity for the first time to cast a meaningful vote, the Newtown community banded together with a record high turnout and elected Plaintiff Atkins as the first African-American City Commissioner. He was later elected mayor of Sarasota three times.

## SARASOTA COUNTY COMMISSION ELECTIONS

19. While the voting rights lawsuit helped to rectify the unfair electoral system in the city of Sarasota, the Sarasota County system continued to inhibit election of African-American county commissioners. The County Charter divided the County into five single-member districts, but did not limit voting to residents of each district. Rather, it permitted all voters in Sarasota County to vote in each County Commission election, notwithstanding the actual District in which the voter resided. For years, this system impeded Newtown's ability to meaningfully participate in the election of Sarasota County commissioners, because the community's votes were diluted by the overwhelming caucasion majority throughout the County. An example of this was the 2016 election for District 1 Commissioner, in which Plaintiff Atkins garnered the most votes from District 1 residents but lost the countywide vote.

5

20. One solution to this unfair situation was a citizen initiative in 2018 to amend the Sarasota County Charter to eliminate countywide voting and limit voting in each district to residents of that district. Over 15,000 citizens signed petitions enabling the initiative to be placed on a referendum to be voted on in November 2018.

21. As described by one proponent of the plan, the citizen initiative generated "a tidal wave of opposition" by Sarasota County's entrenched power structure. One of the most vocal leaders of the tidal wave was Robert Waechter, the former head of the Sarasota Republican Party. Waechter publicly opined that the initiative should be voted down because it was designed to prevent Republicans from "gerrymandering," which is an oft-used technique to protect those already in power. Even though political or racial gerrymandering is prohibited by Article III, Sections 20 and 21 of the Florida Constitution, Waechter and others in the Republican Party wanted to gerrymander because it would protect the seats of existing commissioners and preserve control of the County Commission by white residents and the Republican Party. Not only were they determined to gerrymander, they ultimately decided to do so based upon race.

22. Waechter was less than a perfect advocate for the opposition to the initiative. He had a long history of troubles with the law, including arrests for auto theft, burglary, and fraud. Waechter was arrested in 2012 for engaging in a political "dirty trick" – making campaign contributions to Democrats on behalf of Republican primary candidate Lourdes Ramirez, thereby falsely portraying Ms. Ramirez as supporting Democrats. Ms. Ramirez had run afoul of Waechter and his patrons by challenging proposals for commercial development made by large Republican donors. Waechter ultimately pleaded guilty to a felony violation of election laws and

a misdemeanor fraud charge. He was sentenced to three months of house arrest, two years of probation, 100 hours of community service and $5,000 in fines.

23. Notwithstanding the efforts of Waechter and others to preserve the unfair voting system, the Charter amendment was adopted by almost 60% of the voters. By this important reform, each Sarasota County Commissioner would now be elected only by the voters in his or her district.

### SARASOTA COUNTY'S REACTION: RACE-BASED REDISTRICTING

24. The reform had another consequence, however, that existing Commissioners and their money patrons feared. With single-member district voting, Newtown would have a real opportunity to elect a county commissioner who was either African-American or who was responsive to the needs and priorities of the Newtown African-American community in District 1. Indeed, absent countywide voting, Plaintiff Atkins would have been elected District 1 Commissioner in 2016.

#### **Redistricting Without Adequate Data in Advance of the 2020 Census**

25. Almost immediately after adoption of the Charter amendment in the November 2018 referendum, persons associated with the longstanding white Republican power structure, along with certain members of the County Commission who felt threatened by elevation of Newtown voters, began a push to redefine the voting districts in a way that would completely prohibit Newtown's African-American residents from voting in the 2020 election.

26. For example, Commissioner Nancy Detert described passage of the Charter Amendment, with the corresponding obligation of commissioners to obtain a majority of the voters in their district, as a "sea change" that necessitated redistricting. The "sea change" was obvious to Commissioner Detert and other Commissioners: enabling the residents of Newtown to

7

have a meaningful vote could result in the election of an African-American commissioner from District 1. At that moment, Plaintiff Atkins had declared his challenge to District 1 Commissioner Mike Moran in the 2020 election, and with the new Charter amendment's prohibition of countywide voting, that election would now be competitive.

27. But any redistricting effort was premature, however. Article VIII § 1 of the Florida Constitution provides that "[a]fter each decennial census the board of county commissioners shall divide the county into districts of contiguous territory as nearly equal in population as practicable." *See* art. VIII, § 1(e), Fla. Const. Florida Statutes § 124.01 provides that this may only be done in odd numbered years. *See* § 124.01(3), Fla. Stat. Therefore, redistricting would be required again in year 2021, after completion of the 2020 census.

28. Although the decennial 2020 census was less than one year away, almost immediately after the Charter amendment's adoption, Sarasota County Commissioners Detert and Moran began pushing for an immediate redistricting. Although Detert publicly stated that the redistricting could be accomplished without retaining a consultant, the County Commissioners retained a consultant, Kurt Spitzer, to estimate the current population of each district. This was a very difficult, if not impossible task, because redistricting should be based upon current and accurate population data at the census block level, which is the smallest geographic unit in the census hierarchy and which is commonly used to create equally populated districts. But no such data has been collected since the 2010 census, and none will be collected until the 2020 census. Thus, any population study would only be an estimate unfounded in current population data.

29. Because the County Commissioners had decided not to wait for the 2020 census, Mr. Spitzer was forced to retain a demographer who is one of two people in Florida assigned to

work with the Bureau of Census to plan for the 2020 census. But in the absence of current data at the census block level, Spitzer and the demographer were forced to use stale data from the 2010 census, and extrapolate projected populations from outdated census information.

30. Spitzer's study, based upon estimates using outdated data, found a 12.26% difference between the most and least populated Commission districts.

31. Mr. Spitzer's study was clearly flawed. A cursory examination of the census block population estimates showed important inaccuracies, such as a block with 1,600 more people than reasonably could live there, and other block estimates that did not account for new developments in 2018.

32. The fundamental flaw in the study did not stop members of the County Commission from proceeding, however, because the true reason for seeking a redistricting was to ensure that Newtown residents would not have any ability to vote for an African-American candidate in District 1 in the 2020 election. The redistricting was simply a pretext to deprive African-American voters from meaningfully participating in the local 2020 election, and thereby protect Moran's vulnerable District 1 Commission seat

33. Therefore, a majority of the County Commissioners immediately seized upon the flawed study as a reason to conduct a redistricting before the 2020 election, without the benefit of the 2020 census. The County Commissioners directed Spitzer to attempt to draw up maps containing new boundaries, and invited members of the public to submit alternatives.

### **The Mysterious Smith Map**

34. On September 30, 2019, after Spitzer had crafted potential maps with new boundaries and submitted them to the County Commission, a mysterious map appeared anonymously on Sarasota County's online portal. It was crudely drawn in crayon, and submitted

under the anonymous name "Agood Citizen." It indicated that it had been drawn by "Adam Smith." It did not utilize the Spitzer's estimated data, or any other population data.

35. The map showed a new configuration of the county commission districts, based blatantly upon racial classifications. The map removed Newtown from District 1 and moved it to District 2, whose commissioner seat was not up for reelection until November 2022. It also removed Plaintiff Atkins from District 1, where he had already declared his candidacy.

36. Plaintiff Atkins had previously run for the District 1 seat against Defendant Moran and had carried District 1. Now that single-member voting had been adopted, the prospect existed that African-American voters could tip the balance and elect an African-American representative from District 1. Moving Newtown and Atkins to District 2 would prevent that possibility. Moreover, the race-based move would have the effect of again diluting the African-American vote in 2022 because there are more white voters in District 2 than in District 1.

37. Initially, at an October 30, 2019 County Commission meeting, Detert criticized the "Smith" map because "the numbers were so out of whack; it was the worst of all maps when it came to the numbers and the disparities." Nevertheless, she voted in favor of proceeding with and adoption of the "Smith" map, with small modifications. Defendant Detert repeatedly admitted her reason for doing so: because of the adoption of the amendment to the Sarasota County Charter limiting voting to residents of each district.

38. Through its investigative reporting, the Sarasota Herald Tribune identified Waechter as the true author of the "Smith" map. Waechter initially denied being the author, even after being confronted with evidence that the Herald Tribune had uncovered, but eventually admitted that he crafted the map.

39. Other maps were proposed which did not completely deprive all residents of Newtown of their right to vote in the 2020 election, including maps drawn by the population consultant that the County Commissioners retained. However, the County Commissioners ultimately voted 3 – 2 to adopt the race-based "Smith" map.

40. Residents of Newtown and other citizens testified before the County Commission as to the deleterious effect that adoption of the "Smith" map would have on the constitutional right to vote held by African-American voters in a long established community. For example, James Edwards III testified as follows:

> I'm here to rise in direct opposition to any map that dilutes or delays the vote of the largest and oldest African American community, albeit a small community, Commissioner Detert, but the largest and oldest African American community in Sarasota County, that being Newtown. I rise in any opposition to any map that dilutes or delays the vote in that community.
>
> For me, this is not about partisan affiliation, this is about simply right versus wrong or, better yet, lawful versus unlawful. Because if you go to the County's website, which I'm sure you all have gone to, it mirrors Federal law and instructs against diluting minority voting strength. The map that was endorsed by you, Commissioner Detert, and you, Commissioner Moran, would not only cast out the sole candidate, the only candidate currently filed to run in that district, District 1, but excludes most of North Sarasota and all of Newtown by sliding it into another district not up for election until 2022, thus not only removing the largest minority community in the county from participating in the process, but selecting – but postponing that for more years to come.
>
> To our community, historical voter disenfranchisement isn't theoretical. It lives in the not too distant memories of our friends, families and other neighbors living and breathing in a community we hold dear.
>
> While the Sarasota County Commission has broad authority to redistrict, whether it makes sense or not, that authority does not permit, and I repeat, does not permit returning to the unjust disenfranchising policies of our past. Perhaps you couldn't care less about the will of the people. Maybe you don't care about the over 60 percent of Sarasotans that voted in favor of single-member districts. Maybe you don't even care about the 10,000 black folks not voting in 2020, if you adopt that map. But if you care about protecting yourselves against a federal lawsuit, and if you care about protecting our taxpayer dollars, I highly encourage that you listen

to these folks behind me wearing these red and white shirts that say "RIGGED" and do the right thing.

41.     Defendant Detert responded sarcastically: "Did you submit a map, or did your caring and passion just come out today, or did you submit a map (sic) . . . Did you care about your community enough to draw a map . . . to protect your community?" County Commissioner Chair Hines ruled her statement to be out of order.

42.     Despite the lack of demonstrated need for an early redistricting, despite the clear racial discrimination fueling the "Smith" map, despite the fact that the map had been secretly drawn by a convicted political power broker, and despite the passionate opposition of the Newtown community and others, the County Commissioners voted 3 – 2 to adopt the "Smith" map. Defendants Detert, Moran and Maio cast the three votes in favor of it, thereby denying Plaintiffs and all Newton residents the right to vote in the 2020 election and denying Plaintiff Atkins his constitutional right to run for an elected office in 2020 because he is African-American.

## CLASS ACTION ALLEGATIONS

43.     Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2) on behalf of themselves and all other similarly situated, and seeks certification of the following class:

44.     All residents of Sarasota County, Florida whose right to vote in the 2020 election of a District 1 member of the Sarasota County Board of Commissioners was lost or abridged by virtue of being removed from District 1 by Sarasota County on the basis of their race or color.

45.     Excluded from the Class are (i) any Judge or Magistrate presiding over this action and members of their families, (ii) any attorney appearing for any of the Parties, and (iii) any person who properly execute and files a timely request for exclusion from the Class.

46. **Numerosity.** The Class exceeds 11,000 individuals and therefore is so numerous that joinder of all members is impracticable.

47. **Commonality.** There exist questions of law and fact common to the Class, including:

    (a) Whether African-American voters living in the Newtown community have been deprived of the right to vote;

    (b) Whether redistricting was simply a pretext to deprive Newtown's African-American residents from participating in the 2020 election;

    (c) Whether the "Smith" map violates the Fourteenth Amendment to the United States Constitution;

    (d) Whether the "Smith" map violates Section 2 of the Voting Rights Act, 52 U.S.C. § 10301; and

    (e) Whether the Class is entitled to injunctive relief and attorneys' fees and/or expenses.

48. **Typicality.** The claims or defenses of the putative class representative parties are typical of the claims of the Class.

49. **Adequate Representation.** Plaintiffs will fairly and adequately protect the interests of the Class. They have retained counsel experienced in class action litigation. Plaintiffs and counsel do not have any interests which might cause them not to vigorously pursue this action.

50. **Policies Generally Applicable to the Class.** This class action is appropriate for certification because Sarasota County has acted and refused to act on grounds that apply

generally to the Class, so that final injunctive and declaratory relief is appropriate respecting the Class as a whole.

## COUNT I
### (Violation of the Fourteenth Amendment, Equal Protection Clause)

51. Plaintiffs incorporate the allegations of paragraphs 1 through 50 as if fully set forth herein.

52. Section 1 of the Fourteenth Amendment to the United States Constitution prohibits states from depriving "any person within its jurisdiction of the equal protection of the laws." U.S. Const. amend. XIV, § 1.

53. Under 42 U.S.C. § 1983, every person acting under color of state law who deprives any other person of his or her constitutional rights is also liable at law or equity.

54. The Equal Protection Clause of the Fourteenth Amendment forbids intentionally assigning voters to a district on the basis of race without sufficient justification.

55. Acting under color of state law, the County Commissioners deprived certain Newtown residents of their right to vote on an equal basis by redistricting county lines to completely prohibit Newtown's African-American residents from participating in the 2020 election.

56. The County Commissioners' existing redistricting plan was adopted and is being maintained in an effort to segregate voters into separate districts on the basis of race.

57. Discrimination based on race in the voting context is a clear violation of the Fourteenth Amendment. There is no compelling justification or state interest in creating districts along racial lines to limit minority participation in the political process.

58. By engaging in the acts and omissions alleged herein, the County Commissioners have denied Plaintiffs of their rights guaranteed by the Fourteenth Amendment of the U.S. Constitution.

59. The failure to permanently enjoin the County Commissioners from implementing the existing redistricting plan will irreparably harm Plaintiffs by violating their constitutional rights secured by the Fourteenth Amendment and inflict injuries for which Plaintiffs have no adequate remedy at law.

## COUNT II
### (Violation of § 2 of the Voting Rights Act, 52 U.S.C. § 10301)

60. Plaintiffs incorporate the allegations of paragraphs 1 through 50 as if fully set forth herein.

61. Section 2 of the Voting Rights Act was enacted to enforce the Fifteenth Amendment of the United States Constitution's prohibition against denying a citizen the right to vote "on account of race". U.S. Const. amend. XV, § 1.

62. Specifically, Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, prohibits any "standard, practice, or procedure" that "results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color". 52 U.S.C. § 10301(a).

63. The County Commissioners' redistricting plan denies African-American voters an equal opportunity to participate in the political process and to elect representatives of their choice by denying their right to vote, in violation of Section 2 of the Voting Rights Act.

64. Sarasota County has a long history of discriminatory-sanctioned conduct that has excluded African-American citizens from participating in the political process. Additionally, its electoral system reflects a clear pattern of racially polarized voting that allows the bloc of caucasion voters to defeat the African-American community's preferred candidate(s).

65. In November of 2018, as a result of a citizen initiative and the support of almost 60% of County voters, the Sarasota County Charter was amended to change commissioner elections to single-member voting districts.

66. Under single-member district voting, African-American citizens would be able to influence county commissioner elections. Sarasota County's African-American population is sufficiently large and geographically concentrated to constitute a majority in at least one fairly drawn, constitutional single-member district.

67. However, almost immediately after adoption of the Charter amendment allowing for single-member voting districts, the County Commissioners adopted the existing redistricting plan, which prohibits Newtown's African-American residents from voting in the 2020 election.

68. The County Commissioners' decision to redistrict and remove Newtown arbitrarily and without regard to other considerations, such as geographical compactness, contiguousness, geographical boundaries, or political subdivisions, was made with full awareness of the intended consequences – disenfranchisement of African-American voters.

69. The totality of the circumstances establishes that the existing redistricting plan denies African-American voters of an equal opportunity to participate in the political process and to elect candidates of their choice.

70. By engaging in the acts and omissions alleged herein, the County Commissioners have denied Plaintiffs of their rights guaranteed by Section 2 of the Voting Rights Act.

71. The failure to permanently enjoin the County Commissioners from implementing the existing redistricting plan will irreparably harm Plaintiffs by violating their rights secured by Section 2 of the Voting Rights Act and inflict injuries for which Plaintiffs have no adequate remedy at law.

## COUNT III
### (Violation of Article III, § 21 of the Florida Constitution)

72. Plaintiffs incorporate the allegations of paragraphs 1 through 50 as if fully set forth herein.

73. Florida Constitution, Article III, § 21 prohibits state legislative districts from being "drawn with the intent to favor or disfavor a political party or an incumbent". This constitutional provision further prohibits districts from being "drawn with the intent or result of denying or abridging the equal opportunity of racial or language minorities to participate in the political process or to diminish their ability to elect representatives of their choice". Art. III, § 21(a), Fla. Const.

74. The County Commissioners reapportionment plan clearly demonstrates incumbent favoritism, partisan gamesmanship and abridging the equal opportunity of African-American voters from participating in the 2020 election and to elect representatives of their choice.

75. The County Commissioners gerrymandered in order to protect the seats of existing commissioners and preserve control of the County Commission by white residents and the Republican Party.

76. Not only were the County Commissioners determined to gerrymander, they ultimately decided to do so based upon race.

77. The County Commissioners' decision to redistrict and remove Newtown arbitrarily from District 1 to District 2 was made with full awareness of the intended consequences – disenfranchisement of African-American voters.

78. The County Commissioners' actions violate both the intent and the letter of the constitutional requirements of Article III, Section 21.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment: (i) declaring that the County Commissioners' redistricting plan, as evidenced in the "Smith" map, has the purpose and effect of denying or abridging the right of African-American voters in Newtown to effectively participate in the political process; (ii) declaring that the County Commissioners' redistricting plan reflects a racial gerrymander in violation of the Fourteenth Amendment to the United States Constitution; (iii) declaring that the County Commissioners' redistricting plan violates Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, and the Fifteenth Amendment to the United States Constitution; (iv) declaring that the County Commissioners' redistricting plan violates Article III, Section 21 of the Florida Constitution; (v) permanently enjoining the Board from using the "Smith" map in the 2020 election of the Sarasota County Board of Commissioners; (vi) permanently enjoining the County Commissioners from redistricting until after 2020 census figures have been determined; (vii) extending the deadline for filing certificates of announcement of candidacy for the 2020 Sarasota County Board of Commissioners election; (viii) retaining jurisdiction of this action until such time as the Board's redistricting plan is promulgated in accordance with constitutional requirements; (ix) awarding Plaintiffs' costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and 52 U.S.C. § 10310(e); and (x) granting such other and further relief as the Court may deem just and proper.

Dated: January 9, 2020.                                   Respectfully submitted,

| | |
|---|---|
| **LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP**<br>*Counsel for Plaintiffs*<br>Citigroup Center, 22nd Floor<br>201 South Biscayne Boulevard<br>Miami, FL 33131<br>Telephone (305) 403-8788<br>Facsimile (305) 403-8789<br><br>By: *Lawrence A. Kellogg*<br>LAWRENCE A. KELLOGG, P.A.<br>Florida Bar No. 328601<br>Primary: lak@lklsg.com<br>Secondary: ah@lklsg.com<br>TAL ABUROS, ESQ.<br>Florida Bar No. 1010901<br>Primary: ta@lklsg.com<br>Secondary: eri@lklsg.com<br>(Admission to District Court pending) | **HUTTON & DOMINKO PLLC**<br>*Co-Counsel for Plaintiffs*<br>2639 Fruitville Road<br>Suite 302<br>Sarasota, FL 34237<br>Telephone (941) 364-9292<br>Facsimile (941) 364-3777<br><br>By: *Steven D. Hutton*<br>STEVEN D. HUTTON, ESQ.<br>Florida Bar No. 0342221<br>Primary: sdh@huttondominko.com<br>PRZEMYSLAW L. DOMINKO, ESQ.<br>Florida Bar No. 0074143<br>Primary: pld@huttondominko.com |
| **HUGH F. CULVERHOUSE**<br>*Co-Counsel for Plaintiffs*<br>121 Alhambra Plz<br>Suite 1510<br>Coral Gables, FL 33134<br>Telephone (305) 285-2558<br>Facsimile (305) 285-2550<br><br>By: *Hugh F. Culverhouse*<br>HUGH F. CULVERHOUSE, ESQ.<br>Florida Bar No. 195852<br>Primary: culverhouse@bloomberg.net | |