# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

FREDD ATKINS, MICHAEL WHITE,
and MARY MACK, individually and on
behalf of others similarly situated,

    Plaintiffs,

v.

                                Case No. 8:19-cv-03048-WFJ-CPT

SARASOTA COUNTY, FLORIDA,

    Defendant.
_____/

## SARASOTA COUNTY'S MOTION FOR SUMMARY JUDGMENT

No record evidence supports an essential element of Plaintiffs' claim: that *race* was the Sarasota County Commission's predominant motive when it redrew the county's commission districts in 2019. Sarasota County, therefore, respectfully moves the Court for final summary judgment.

### INTRODUCTION

The crux of Plaintiffs' complaint is that the Sarasota County Commission engaged in a seven-month, racially motivated redistricting process to deprive voters in Newtown—a small African-American community—of the opportunity to vote for a county commissioner in 2020. Plaintiffs allege, and must prove, that *race* was the County Commission's predominant motive. The undisputed evidence produced in discovery shows that Plaintiffs cannot carry their burden.

In Sarasota County, odd-numbered districts vote in presidential-election years, while even-numbered districts vote in non-presidential-election years. Thus, two-fifths of all voters in Sarasota County will not vote for a county commissioner in 2020. Plaintiffs claim, however, that the placement of Newtown in an even-numbered district during the 2019 redistricting was racially motivated to deny African-American voters an opportunity to participate in the 2020 election.

The evidence fails to support that allegation. In fact, the undisputed evidence proves that district numbers were assigned in a race-neutral manner. Sarasota County's redistricting consultant assigned district numbers according to the residences of incumbents, assuring that incumbent commissioners retained their district numbers. The District 2 designation, therefore, was assigned to the district that includes Newtown for the simple reason that the incumbent who was elected from former District 2 resides in that district. The incumbent's district number followed him to new District 2. Plaintiffs have identified no evidence that the district-number designation was racially motivated to exclude African-Americans from the 2020 election, or that racial considerations motivated the Commission's selection among alternative proposals.

Because Plaintiffs can offer no admissible evidence—let alone significantly probative evidence—to support their contention that race motivated the County Commission to assign Newtown to one of the two districts that will not vote in 2020, Sarasota County is entitled to summary judgment.

## LEGAL STANDARD

### I. SUMMARY-JUDGMENT STANDARD.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant may discharge its burden by "pointing out" the absence of evidence to support an essential element of the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593–94 (11th Cir. 1995). The non-movant "then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute." *Thurmon v. Georgia Pac.*, LLC, 650 F. App'x 752, 756 (11th Cir. 2016). "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Spence v. Zimmerman*, 873 F.2d 256, 257 (11th Cir. 1989) (quoting *Celotex*, 477 U.S. at 323).

### II. EQUAL-PROTECTION STANDARD.

To plead a racial-gerrymandering claim, a plaintiff must demonstrate that race was the "predominant motive" in the design of a district. *Bethune-Hill v. Va. State Bd. of Elections*, 137 S. Ct. 788, 800 (2017); *accord Miller v. Johnson*, 515 U.S. 900, 916 (1995). This burden is "a demanding one." *Easley v. Cromartie*, 532 U.S. 234, 241 (2001) (quoting *Miller*, 515 U.S. at 928 (O'Connor, J., concurring)). It is not enough to show that the legislative body was "aware of racial demographics," *Miller*, 515 U.S. at 916, or even that race was one motivation, *Easley*, 532 U.S. at 241. The "constitutional wrong" occurs only when traditional, race-neutral redistricting principles are subordinated to race, *Miller*, 515 U.S. at 916, and race becomes the

"dominant and controlling rationale," *Shaw v. Hunt*, 517 U.S. 899, 905 (1996) (quoting *Miller*, 515 U.S. at 913). A plaintiff's task, in other words, is "to persuade the trial court . . . that race (not politics) was the predominant consideration in deciding to place a significant number of voters within or without a particular district." *Cooper v. Harris*, 137 S. Ct. 1455, 1479 (2017).

A plaintiff, moreover, must overcome a presumption that districts were drawn in good faith, and a corresponding judicial reticence to intrude upon "the most vital of local functions." *Miller*, 515 U.S. at 915. Courts recognize that redistricting is a "most difficult task"—a task that involves a "complex interplay of forces" and "discretion to exercise the political judgment necessary to balance competing interests." *Id*. at 915–16; *accord Abbott v. Perez*, 138 S. Ct. 2305, 2324 (2018). The "sensitive nature of redistricting" and the presumption of good faith require courts to "exercise extraordinary caution in adjudicating claims that a State has drawn district lines on the basis of race." *Miller*, 515 U.S. at 916. A court must be sensitive to "the intrusive potential of judicial intervention into the legislative realm, when assessing under the Federal Rules of Civil Procedure the adequacy of a plaintiff's showing at the various stages of litigation and determining whether to permit . . . trial to proceed." *Id*. at 916–17 (citing Fed. R. Civ. P. 56 and *Celotex*). After all, a redistricting plan that places individuals of one race into one district "may reflect wholly legitimate purposes." *Shaw v. Reno*, 509 U.S. 630, 646 (1993).

## ARGUMENT

Throughout their complaint, Plaintiffs allege that the County Commission adopted a redistricting plan "designed to deprive" Newtown's residents of the right to vote for a county commissioner at the 2020 election. ECF No. 1 ¶ 1; *accord id*. ¶¶ 2, 6–8, 13, 14, 25, 32, 35, 36, 39, 40, 42, 44, 47, 55. Plaintiffs allege that a racially motivated County Commission "removed

Newtown from District 1 and moved it to District 2," which will not vote until 2022. *Id*. ¶ 35.

The undisputed evidence does not support, but rather refutes Plaintiffs' claim. Plaintiffs can adduce no facts to show that race motivated the Sarasota County Commission to deprive Newtown's residents of an opportunity to vote for a county commissioner in 2020. Indeed, it is undisputed that district numbers were assigned in a race-neutral manner, without respect to race or to Newtown. Plaintiffs have found no evidence to support their theory that the County Commission, with race-based motives, conspired to exclude Newtown from the 2020 election.

In 2018, the voters of Sarasota County amended the county charter to eliminate at-large elections for County Commission, limiting the right to vote in each county-commission race to residents of the commission district. SOF ¶ 1.[1] Soon after, the County Commission initiated redistricting and retained an experienced redistricting consultant, Kurt Spitzer. *Id*. ¶¶ 2–3. Spitzer prepared three alternative maps for the County Commission's consideration. *Id*. ¶ 4. The county also received five hand-drawn submissions from members of the public: the Mason map, two Miller maps, the Smith map, and the Thomas map. *Id*. ¶ 6. To determine whether any of the hand-drawn submissions was viable, Spitzer recreated those maps electronically. *Id*. ¶ 7.

On October 7, 2019, Spitzer suggested to the County Commission that only one of the five public submissions—the Smith map—could be made legally compliant without significant revisions. *Id*. ¶ 16. The County Commission directed Spitzer to make those revisions. *Id*. On November 19, 2019, the Commission considered Spitzer's modification of the Smith map and adopted that proposal. *Id*. ¶¶ 18–19. In that map, Newtown is located in District 2, which, as

---

[1] "SOF" refers to the Statement of Undisputed Material Facts filed contemporaneously with this motion.

5

an even-numbered district, will not vote for a county commissioner in 2020. ECF No. 9 ¶ 35.

The undisputed evidence in the record demonstrates that Newtown was not placed in District 2 to deprive African-Americans of the opportunity to vote for a county commissioner in 2020. Rather, Spitzer numbered districts in the alternative maps in a race-neutral manner. Quite simply, he assigned to each proposed district the district number of the incumbent who resided in that district, allowing county commissioners to retain their district numbers. *Id*. ¶ 8. This methodology assured that commissioners would be able to complete their four-year terms and seek reelection on the ordinary four-year schedule. *Id*. The district that contains Newtown was designated as District 2 because Commissioner Christian Ziegler, the incumbent in former District 2, resided in that district. *Id*. ¶¶ 9–10. Spitzer did not assign district numbers based on race or by reference to Newtown, nor was he directed to number districts in any particular way. *Id*. ¶ 12. In fact, Spitzer does not recall any discussion with any county employee or any county commissioner regarding district-number designations. *Id*. Spitzer alone decided how districts would be numbered. *Id*.

The evidence, moreover, does not support an assertion that, after Spitzer had numbered the districts in a race-neutral fashion, racial considerations predominated in the Commission's selection among alternative proposals. The facts are simply not there. The facts do not suggest that a desire to deprive African Americans of the opportunity to vote in 2020 drove the County Commission's selection of a redistricting plan. Neither Plaintiffs' criticisms of the county's population estimates, nor their allegations regarding a private citizen's submission of a map, have anything to do with race, or suggests that racial considerations motivated the selection of a redistricting plan. And an alleged history of race discrimination decades ago does not begin

to support an inference that race was the predominant motive when *this* County Commission adopted *this* redistricting plan in 2019. *See Abbott v. Perez*, 138 S. Ct. 2305, 2324–27 (2018) (concluding that the improper motive of the legislature only two years earlier was "plainly insufficient" to prove that the legislature had engaged in racial gerrymandering when it redrew the districts two year later). Indeed, at their depositions, Plaintiffs were unable to identify any statement by a county commissioner that suggests a racial motivation in redistricting. *Id*. ¶ 22.

In place of facts, Atkins denounced the County Commission as a "racist group" and insisted that all five county commissioners, the entire redistricting process, and all redistricting plans that place Newtown in an even-numbered district are racially motivated. *Id*. At this late stage, broad allegations without factual support are insufficient to warrant further proceedings.

In effect, Plaintiffs contend that any redistricting plan, regardless of its specific district boundaries, that places Newtown (like two-fifths of Sarasota County) in an even-numbered district must be racially motivated. In other words, Plaintiffs contend that because Newtown is primarily African American, its residents have a constitutionally protected right to vote at the 2020 election, rather than in 2022. No court has ever endorsed that position. Nor has any court suggested that the adoption of a redistricting plan over the objections of a minority population establishes racial motivation. *See* ECF No. 9 ¶ 42 (noting that the County Commission adopted the new redistricting plan "despite the passionate opposition of the Newtown community"). To hold that it does would confer an effective veto over the actions of the County Commission.

Plaintiffs' contention that the County Commission redrew the commission districts for political reasons only undermines their position. *See* ECF No. 9 ¶¶ 1, 2, 21, 32, 36; *cf. id*. ¶¶ 19, 21 (alleging that, in 2016, Atkins received more votes in District 1 than Commissioner Moran

did, and that Bob Waechter and the Republican Party responded to the charter amendment by gerrymandering). A *political* motive is distinct from—and does not establish—a *racial* motive, even if the affected voters or candidates are racial minorities. The Supreme Court has cautioned that race and political affiliation often correlate and that a plaintiff must "disentangle race from politics and prove that the former drove a district's lines." *Cooper v. Harris*, 137 S. Ct. 1455, 1473 (2017); *accord Easley v. Cromartie*, 532 U.S. 234, 242–58 (2001); *Hunt v. Cromartie*, 526 U.S. 541, 551–52 (1999); *Bush v. Vera*, 517 U.S. 952, 968–69 (1996) (plurality opinion).

To avoid summary judgment, Plaintiffs must do more than cite "colorable" evidence; they must produce "significantly probative" evidence that demonstrates a genuine dispute of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). Here, summary judgment is appropriate because Plaintiffs have identified no evidence—let alone significantly probative evidence—that overcomes the strong presumption of good faith to which the County Commission is entitled, *see Miller*, 515 U.S. at 916–17, and that supports Plaintiffs' hypothesis that the County Commission, with racial motivations, engaged in a seven-month redistricting effort intentionally to exclude Newtown's small African-American community from the 2020 election.[2]

---

[2] This Court may take judicial notice that Newtown, as defined in Plaintiffs' operative complaint, ECF No. 9 ¶ 15, is a 1.0-square-mile area within the City of Sarasota, *see Munson S.S. Lines v. Newman*, 24 F.2d 416, 417 (5th Cir. 1928) (taking judicial notice of the distance between cities); *United States v. Williams*, 476 F. Supp. 2d 1368, 1378 n.6 (M.D. Fla. 2007) (concluding that a court may take judicial notice of the driving distance between two points if the distance is determined by a mapping service, the accuracy of which cannot reasonably be questioned).

## CONCLUSION

The evidence, therefore, refutes Plaintiffs' contention that a racially motivated County Commission transferred Newtown from District 1 to District 2 to deprive Newtown's residents of the opportunity to vote for a county commissioner in 2020, or to prevent Newtown resident Fredd Atkins from running for office in 2020. Because Plaintiffs cannot produce significantly probative evidence that the County Commission acted with a predominantly racial motive to deny Newtown an opportunity to participate in the 2020 election—or that the Commission acted with a predominantly racial motive to accomplish any other purpose in the enactment of new county-commission districts—a trial is unnecessary, and the Court should enter summary judgment.

Respectfully submitted,

/s/ *Andy Bardos*

| | |
|---|---|
| John A. Boudet, Esquire | Andy Bardos |
| Florida Bar No. 515670 | Florida Bar No. 822671 |
| john.boudet@gray-robinson.com | andy.bardos@gray-robinson.com |
| GRAYROBINSON, P.A. | George T. Levesque |
| 301 East Pine Street, Suite 1400 | Florida Bar No. 555541 |
| Orlando, Florida 32801-2741 | george.levesque@gray-robinson.com |
| Telephone: 407-843-8880 | James Timothy Moore, Jr. |
| Facsimile: 407-244-5690 | Florida Bar No. 70023 |
| | tim.moore@gray-robinson.com |
| Frederick J. Elbrecht | GRAYROBINSON, P.A. |
| County Attorney | Post Office Box 11189 |
| Florida Bar No. 314609 | Tallahassee, Florida 32302-3189 |
| relbrecht@scgov.net | Telephone: 850-577-9090 |
| David M. Pearce | Facsimile: 850-577-3311 |
| Assistant County Attorney | |
| Florida Bar No. 0107905 | |
| dpearce@scgov.net | |
| Office of the County Attorney | |
| 1660 Ringling Boulevard, Second Floor | |
| Sarasota, Florida 34236 | |
| Telephone: 941-861-7261 | |
| Facsimile: 941-861-7267 | |

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that, on April 6, 2020, this document was served electronically on the individuals identified on the Service List that follows.

/s/ *Andy Bardos*
Andy Bardos (FBN 822671)
GRAYROBINSON, P.A.

## SERVICE LIST

Levine Kellogg Lehman
Tal Aburos
Schneider + Grossman LLP
Citigroup Center, 22nd Floor
201 South Biscayne Boulevard
Miami, Florida 33131
lak@lklsg.com
ah@lklsg.com
ta@lklsg.com
eri@lklsg.com
*Attorneys for Plaintiffs*

Steven D. Hutton
Przemyslaw L. Dominko
Hutton & Dominko PLLC
2639 Fruitville Road, Suite 302
Sarasota, Florida 34237
sdh@huttondominko.com
pld@huttondominko.com
*Attorneys for Plaintiffs*

Hugh F. Culverhouse
121 Alhambra Plz, Suite 1510
Coral Gables, Florida 33134
culverhouse@bloomberg.net
*Attorneys for Plaintiffs*